# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

LAURIANNE L.,

    Plaintiff,

v.

MARTIN O'MALLEY,

    Defendant.

Case No. 2:24-cv-00565-NJK

**Order**

This case involves judicial review of administrative action by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for supplemental security income pursuant to Title XVI of the Social Security Act. Currently before the Court is Plaintiff's motion to reverse and remand. Docket No. 11. The Commissioner filed a responsive brief. Docket No. 13. Plaintiff filed a reply. Docket No. 14. The parties consent to resolution of this matter by the undersigned magistrate judge. Docket No. 3; *see also* Gen. Order. 2019-08.

**I.  STANDARDS**

    A.  Judicial Standard of Review

The Court's review of administrative decisions in social security disability benefits cases is governed by 42 U.S.C. § 405(g). *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that, "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action...brought in the district court of the United States for the judicial district in which the plaintiff resides." The Court may enter, "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id*.

The Commissioner's findings of fact are deemed conclusive if supported by substantial evidence. *Id*. To that end, the Court must uphold the Commissioner's decision denying benefits if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). Substantial evidence is "more than a mere scintilla," which equates to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 139 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. In determining whether the Commissioner's findings are supported by substantial evidence, the Court reviews the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

Under the substantial evidence test, the Commissioner's findings must be upheld if supported by inferences reasonably drawn from the record. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). When the evidence will support more than one rational interpretation, the Court must defer to the Commissioner's interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Consequently, the issue before this Court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence.

It is incumbent on the Administrative Law Judge ("ALJ") to make specific findings so that the Court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. The ALJ's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. *See, e.g., Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

B.  Benefits Evaluation Process

The individual seeking disability benefits bears the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must

demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected...to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of his claim for disability. *See, e.g.*, 20 C.F.R. § 404.1514. If the individual establishes an inability to perform his prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). If at any step the ALJ determines that he can make a finding of disability or nondisability, a determination will be made and no further evaluation is required. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *see also* 20 C.F.R. § 404.1520(a)(4). The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b).[1] SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. 20 C.F.R. § 404.1572(a)-(b). If the individual is currently engaging in SGA, then a finding of not disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to the second step.

The second step addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits him from performing basic work activities. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence does not establish a significant limitation of an individual's ability to work. *See* 20 C.F.R. §§ 404.1521, 404.1522. If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

---

[1] The five-step process is largely the same for both Title II and Title XVI claims. For a Title II claim, however, a claimant must also meet insurance requirements. 20 C.F.R. § 404.130.

The third step requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the individual's impairment or combination of impairments meet or equal the criteria of a listing and meet the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made. 20 C.F.R. § 404.1520(d). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the individual's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). The residual functional capacity is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. Social Security Rulings ("SSRs") 96-8p. In making this finding, the ALJ must consider all of the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529. To the extent that statements about the intensity, persistence, or functionally-limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must evaluate the individual's statements based on a consideration of the entire case record. SSR 16-3p. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527.

The fourth step requires the ALJ to determine whether the individual has the residual functional capacity to perform his past relevant work ("PRW"). 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b), 404.1565. If the individual has the residual functional capacity to perform his past work, then a finding of not disabled is made. If the

individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to the fifth and last step.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering his residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(g). If the individual is able to do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Lockwood v. Comm'r, Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

## II.     BACKGROUND

### A.     Procedural History

On June 14, 2021, Plaintiff filed an application for supplemental security income with an alleged onset date of December 30, 2000. *See, e.g.*, Administrative Record ("A.R.") 209-218. Plaintiff's application was denied initially and again on reconsideration. A.R. 112-115, 118-119. Plaintiff filed a request for a hearing before an administrative law judge. A.R. 120. On September 13, 2023, Plaintiff, Plaintiff's representative, and a vocational expert appeared for a hearing before ALJ Kathleen Kadlec. *See* A.R. 49-82. On November 6, 2023, the ALJ issued an unfavorable decision finding that Plaintiff had not been under a disability since the date the application was filed. A.R. 19-35. The Appeals Council denied Plaintiff's request for review. A.R. 2-4. On March 25, 2024, Plaintiff commenced suit seeking judicial review. Docket No. 6.

### B.     The Decision Below

The ALJ's decision followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a). A.R. 23-35. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. A.R. 24. At step two, the ALJ found that Plaintiff had the following severe impairments: attention deficit hyperactivity disorder ("ADHD"); anxiety disorder; depression; post-traumatic stress disorder ("PTSD"); chronic rhinitis; and asthma. A.R. 24-25. At step three, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. A.R. 25-27. The ALJ found that Plaintiff has the RFC

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: She can occasionally climb ladders; never climb ropes or scaffolds; never work at unprotected heights, occasionally work with moving mechanical parts, and occasionally operate a motor vehicle. She can occasionally perform work outside and occasionally work in extreme cold and extreme heat. She can understand, remember, and carry out detailed, but not complex tasks; frequently interact with supervisors; and occasionally interact with co-workers and the public.

A.R. 27-33. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work as a telemarketer. A.R. 33. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform based on her age, education, work experience, and RFC. A.R. 33-35. Based on all of these findings, the ALJ found Plaintiff not disabled from the date the application was filed. A.R. 35.

## III.   ANALYSIS

Plaintiff submits that the ALJ failed to properly evaluate the medical evidence in assessing her RFC. Docket No. 11 at 5. Plaintiff submits that the medical opinions were consistent with, and supported by, the record. Docket No. 11 at 6. Additionally, Plaintiff submits that, by finding all medical opinions of record unpersuasive, the ALJ's RFC assessment "represents nothing but her own lay medical opinion." Docket No. 11 at 7. Specifically, Plaintiff argues that the ALJ did not adequately explain how she arrived at Plaintiff's mental limitations. Docket No. 11 at 7. The Commissioner responds that substantial evidence supports the ALJ's assessment of Plaintiff's RFC. Docket No. 13 at 5.

Plaintiff further submits that the ALJ failed to articulate clear and convincing reasons for discounting Plaintiff's symptom and limitation testimony. Docket No. 11 at 9. The Commissioner responds that the ALJ reasonably discounted Plaintiff's self-reports because they conflicted with the medical records, and that the ALJ's reasoning was sufficiently specific. Docket No. 13 at 3.

"[R]esidual functional capacity is the most [Plaintiff] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC determination considers all medically

6

determinable impairments, including those that are not severe. *Id*. at §§ 404.1545(a), 416.945(a). The RFC assessment must consider all evidence in the record and "contain a thorough discussion of the objective medical and other evidence." *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (citing Social Security Ruling 96-8p, 61 Fed. Reg 34474, 34478 (July 2, 1996)). "The RFC is an administrative assessment of the extent to which an individual's medically determinable impairments...may affect his or her capacity to do work-related physical and mental activities." *Id*. (quoting SSR 96-8p, 61 Fed. Reg at 34475). "[A]t the administrative law judge hearing level...the administrative law judge...is responsible for assessing [Plaintiff's] residual functional capacity." 20 C.F.R. §§ 404.1546(c), 416.946(c). The residual functional capacity determination does not need to copy the exact opinion of any particular doctor, but "the ALJ is responsible for translating and incorporating clinical findings into a succinct" residual functional capacity. *Rounds v. Commissioner*, 795 F.3d 1177, 1185-86 (9th Cir. 2015), *as amended*, 807 F.3d 996, 1005-06 (9th Cir. 2015).

### A.     The ALJ's Evaluation of Medical Opinions

When evaluating medical evidence, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R § 404.1520c(a). The ALJ must "articulate how [she] considered the medical opinions and prior administrative medical findings" based on certain specified factors. *Id*. The most important factors are supportability and consistency, which the ALJ must address. 20 C.F.R. § 404.1520c(b). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant...objective medical evidence.' Consistency means the extent to which a medical opinion is 'consistent...with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022) (quoting 20 C.F.R. §§ 404.1520c(c)(1) & (c)(2)).

Plaintiff submits that the ALJ's RFC finding is not supported by substantial evidence. Docket No. 11 at 5. Plaintiff also submits that the medical opinions are consistent with and supported by the record. Docket No. 11 at 6. Further, Plaintiff submits that "the ALJ cannot go it alone and decide severity or residual functional capacity without the support of some medical

7

opinion evidence."[2]  Docket No. 14 at 3.  Defendant responds that the ALJ's RFC assessment, and the ALJ's decision to discredit the medical opinions, were supported by substantial evidence.  Docket No. 13 at 4.

Plaintiff provides no case law in support of her contention that an ALJ's determination must be tethered to a medical opinion.[3]  Instead, the regulations simply state that the ALJ must base the RFC on all the relevant evidence in the case record.  20 C.F.R. § 404.1545(a).  The regulation instructs the ALJ to consider the persuasiveness of the medical opinions based on the supportability and consistency of the opinions.  20 C.F.R. § 404.1545c(b-c).  The ALJ does not need to "accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  As explained below, the Court finds no error in the ALJ's RFC determination.

> a.  <u>State Agency Reviewing Physicians</u>

The ALJ summarized the findings of the state agency consultants tasked with assessing Plaintiff's impairments at the initial and reconsideration levels and concluded that the prior administrative medical findings ("PAMF") were not persuasive.  A.R. 31-32.  Specifically, the ALJ found that, although the PAMF found that Plaintiff had an optimal mental status examination showing normal mood and affect and was well supported with citations to evidence, the findings were inconsistent with the record which found severe physical and mental symptoms resulting in

---

[2] Plaintiff cites to *Tackett v. Apfel*, 180 F.3d 1094 (9th Cir. 1999) to stand for the assertion that the ALJ's severity and RFC finding be supported by medical opinion.  Docket No. 14 at 3. However, the court in that case held that there was no medical *evidence* to support the ALJ's finding as the ALJ relied on the plaintiff's testimony instead of relying on the opinions of physicians.  *Tackett*, 180 F.3d at 1103.  Here, the ALJ supported her finding of severity and RFC with ample citations to medical evidence.

[3] Plaintiff cites to multiple cases, *see* Docket No. 11 at 8, but the cases are not applicable here as they refer to an ALJ's discounting of medical opinions without adequate reasoning.  *See Miller v. Astrue,* 695 F. Supp. 2d 1042, 1047 (C.D. Cal. 2010) ("The ALJ's circular reasoning does not constitute a specific and legitimate reason for rejecting [Doctor's] opinions"); *see also Vaughn v. Berryhill*, 242 F. Supp. 3d 998, 1008 (E.D. Cal. 2017) (finding that the ALJ failed to provide a reason for rejecting a medical opinion that was specific to each doctor's finding).  Here, the ALJ discounted medical opinions and provided adequate reasoning.  The cases do not support the proposition that an ALJ's finding *must* be tethered to a medical opinion.

functional limitations. A.R. 31-32; *see also* A.R. 84-90, 92-98, 99-103. The Court finds that the ALJ's discounting of the PAMF is supported by substantial evidence.

          b.    Gabrielle Molina, MSW

The ALJ summarized Molina's findings and concluded that her opinion was not persuasive. A.R. 32. Molina found that Plaintiff had marked limitations in mental functioning, such as being unable to perform activities within a schedule, maintain regular attendance, be punctual, accept instructions and respond appropriately to criticism from supervisors. A.R. 32; *see also* A.R. 812. Molina further opined that Plaintiff would be absent from work for more than five days per month, off task for 25% or more of the workday, and would require more than 45 minutes of unscheduled break time during an eight-hour workday. A.R. 32; *see also* A.R. 813. The ALJ found that Molina supported these findings with her own findings noting "anxious mood, excited affect, shaking hands, tearfulness, and hyper-arousal." A.R. 32; *see also* 817. The ALJ noted that Plaintiff did not present with shaking hands and as tearful and hyper-aroused in her other treatment, *see* A.R. 835-929; *see also* A.R. 1013-1037, or consistently present like in Molina's records, *see* A.R. 810-823. A.R. 32. Further, the ALJ noted that Molina only provided a fraction of Plaintiff's overall care and did not perform extensive mental status examinations. A.R. 32; *see also* 810-823. The ALJ also found Molina's findings inconsistent with Plaintiff's medication management records, which include largely intact mental status examinations, appearances for refills, and self-reporting of no more than moderate symptoms. A.R. 32; *see also* A.R. 835-929. Lastly, the ALJ noted that Molina did not address the fact that Plaintiff did not consistently take her medications and found that Molina's findings were not consistent with Plaintiff's various work activities. A.R. 32; *see also* A.R. 846, 856, 858, 877; *see also* A.R. 880, 919, 1027, 1030. The Court finds that the ALJ's discounting of Molina's opinion is supported by substantial evidence.

          c.    Devan Stevens, PA-C

The ALJ summarized Stevens' findings and concluded that his opinion was not persuasive. A.R. 32. Specifically, the ALJ found that Stevens' opinion that Plaintiff was impaired in her ability to complete simple tasks, stay organized and attentive, and maintain emotional stability was supported by citations to Plaintiff's self reports of panic and anxiety symptoms, as well as lapses

in memory. A.R. 32; *see also* A.R. 834. The ALJ noted that, while Stevens provided a larger share of Plaintiff's treatment, his opinion was inconsistent with his treatment records which indicated no more than moderate symptoms reported by Plaintiff, noncompliance with her ADHD treatment, largely stable medical dosages, largely intact mental status examinations, and reports of work activity and traveling. A.R. 32. For example, Plaintiff largely reported mild anxiety in Stevens' treatment with no consistent reports of panic attacks. A.R. 32; *see also* A.R. 835-929. The Court finds that the ALJ's discounting of Stevens' opinion is supported by substantial evidence.

### B. The ALJ's Evaluation of Plaintiff's Testimony

Credibility and similar determinations are quintessential functions of the judge observing witness testimony, so reviewing courts generally give deference to such assessments. *See, e.g., Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986). In the Social Security context, "[t]he ALJ is responsible for determining credibility." *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995). An ALJ's assessment of a claimant's testimony is generally afforded "great weight" by a reviewing court. *See, e.g., Gontes v. Astrue*, 913 F. Supp. 2d 913, 917-18 (C.D. Cal. 2012) (citing *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Circ. 1989) and *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985)). If an ALJ's determination to discount a claimant's testimony is supported by substantial evidence, a court should not second-guess that determination. *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012).[4]

The ALJ is required to engage in a two-step analysis to evaluate a claimant's testimony as to pain and other symptoms: (1) determine whether the individual presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of pain or other symptoms alleged; and (2) if so, whether the intensity and persistence of those symptoms limit that individual's ability to perform work-related activities. *See* Social Security Ruling 16-3p, 2017 WL 5180304. In the absence of evidence of malingering, an ALJ may only reject a

---

[4] The regulations previously asked the ALJ to assess "credibility." Social Security Ruling 96-7p. The current regulations require the ALJ to instead "evaluate" the claimant's statements. Social Security Ruling 16-3p. This change does not alter the deferential nature of the Court's review.

claimant's testimony about the severity of symptoms by giving specific, clear, and convincing reasons. *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). Factors that an ALJ may consider include inconsistent daily activities, an inconsistent treatment history, and other factors concerning the claimant's functional limitations. *See* Social Security Ruling 16-3p, 2017 WL 5180304.

Here, the ALJ determined that Plaintiff had ADHD, anxiety disorder, depression, PTSD, chronic rhinitis, and asthma. A.R. 24. Although the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the ALJ concluded that Plaintiff's testimony concerning the intensity, persistence, and limiting effects of the symptoms was not entirely consistent with the medical evidence and other evidence in the records. A.R. 28. Therefore, the ALJ discounted the credibility of Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms. As no evidence of malingering exists in the record, the ALJ was required to provide specific, clear, and convincing reasons for rejecting Plaintiff's testimony based on a consideration of the entire case record, including Plaintiff's testimony at the hearing.

The ALJ stated:

> During the hearing, [Plaintiff] testified to ongoing physical and mental symptoms that affected her ability to perform work activities. Specifically, [Plaintiff] reported that her mental impairments affected her ability to focus, remember, and respond appropriately to people. She also reported PTSD triggers affecting her functioning, including triggers from being cornered, people invalidating her, and Republicans. Because of her symptoms, she has significant difficulties with activities of daily living, including showering, making choices, and interacting with others. Nonetheless, she retained the ability to maintain personal hygiene, dress herself, and walk to the store. Concerning her physical impairments, [Plaintiff] reported breathing difficulties that required daily nebulizer treatments.

A.R. 28.

Plaintiff submits that the ALJ provided "no real analysis in discounting [Plaintiff's] statements." Docket No. 11 at 10. Specifically, Plaintiff submits that "the ALJ summarized the medical evidence but failed to adequately tie that evidence to [Plaintiff's] testimony she found not credible." Docket No. 11 at 10. In assessing Plaintiff's credibility, the ALJ found that the record

shows some degree of limitation, but not to the extent alleged by Plaintiff.  A.R. 29.  The ALJ based this finding on the record of evidence, most notably Plaintiff's own statements, which did not support the degree of limitations alleged.  A.R. 29.  The Court finds that the ALJ properly considered the objective medical evidence in the record when discounting Plaintiff's symptom testimony.  "When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022).  Further, when discounting Plaintiff's symptom testimony, "the 'clear and convincing' standard requires the ALJ to show his work." *Id*. at 499.  "The standard isn't whether [the C]ourt is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Id*.  The ALJ does not need to recite "magic words." *Magallanes v. Bowen,* 881 F.2d 747, 755 (9th Cir.1989) ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion").

Here, the ALJ pointed to specific evidence in the record that contradicted Plaintiff's symptom testimony. For example, the ALJ noted that, despite Plaintiff's claimed social limitations, she appeared able to interact with others on multiple occasions such as working with children and traveling.  A.R. 30; *see also* A.R. 857, 893, 903. Further, the ALJ noted that, despite her claimed difficulty with maintaining her hygiene, A.R. 29-30; *see also* A.R. 63, Plaintiff routinely appeared clean and well-groomed.  A.R. 29; *see also* A.R. 356, 372, 821.  The Court, therefore, finds that it was reasonable for the ALJ to reference the inconsistencies between Plaintiff's subjective symptom testimony and the objective evidence in the record when discounting her testimony.

        a. Daily Activities

Plaintiff submits that the ALJ discounted her complaints due to the extent of her daily activities.  Docket No. 11 at 10.  Plaintiff further submits that the ALJ failed to draw a nexus between routine daily activities and the ability to engage in full time competitive work and, therefore, this was not a legally sufficient reason to discount Plaintiff's complaints.  Docket No. 11 at 11.  The Commissioner submits that the ALJ was justified in discounting Plaintiff's

allegations as the ALJ concluded that Plaintiff's activities demonstrated that she was more functional than she claimed. Docket No. 13 at 5.

In general, an ALJ may consider a claimant's daily activities in determining credibility. *See* 20 C.F.R. §§ 404.1529(a), (c)(3)(i) (activities of daily living are relevant to the credibility determination); see also *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Here, the ALJ discounted Plaintiff's testimony based on the record of evidence, most notably Plaintiff's statements indicating that she retained the ability to drive, prepare simple meals, shop in stores, and manage funds. A.R. 29; *see also* A.R. 299-301. Further, the ALJ noted that Plaintiff reported performing several work activities. A.R. 29-30. An ALJ may consider any work activity, including part-time work, in determining whether a claimant is disabled, *see Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (internal citations omitted), and Plaintiff's own statements establish that she is able to work occasionally. *See* A.R. 860, 862, 919, 905. Further, the ALJ noted that, while Plaintiff claimed she has been fired from several employers due to her medical impairments, A.R. 59, Plaintiff presented no objective evidence to support this claim, such as termination letters. A.R. 30. The Court finds that ALJ's findings regarding Plaintiff's daily activities and work history are supported by substantial evidence.

      b. Medical Treatment

Plaintiff submits that the ALJ discounted her complaints because her treatment had been conservative, and that it was improper to do so, as no provider suggested a more aggressive form of treatment and the record does not support that more aggressive forms of treatments are available for people with Plaintiff's impairments.[5] Docket No. 11 at 11. Relatedly, Plaintiff submits that the ALJ improperly discounted Plaintiff's complaints because treatment has been effective. Docket No. 11 at 12. Plaintiff notes that she testified that her medication dosages have been increased and new medications have been changed and/or added to attempt to get her symptoms under better control. Docket No. 11 at 12; *see also* A.R. 62-63. Plaintiff further submits that the

---

[5] There is nothing in the ALJ's finding that suggests that she discredited Plaintiff for failing to pursue other treatment options.

13

ALJ erred by discounting her testimony overall rather than considering the complaints over different time periods. Docket No. 11 at 12.

The Commissioner submits that the ALJ found that Plaintiff showed a good response to conservative treatment, which undermined her reports of disabling symptoms. Docket No. 13 at 3. Further, the Commissioner submits that, despite the benefit Plaintiff received from medication, she was noncompliant with her prescribed treatment. Docket No. 13 at 4.

An ALJ should consider the frequency, type, and effectiveness of treatment in weighing the claimant's allegations. 20 C.F.R. § 416.929(c)(iv)-(v). Symptoms may wax and wane during the progression of a mental disorder. *See, e.g., Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Those symptoms, however, may also subside during treatment. *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). "With adequate treatment some individuals with chronic mental disorders not only have their symptoms and signs ameliorated, but they also return to a level of function close to the level of function they had before they developed symptoms or signs of their mental disorders." *Id*. (internal citations omitted). Such evidence of medical treatment successfully relieving symptoms can undermine a claim of disability. *See* 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1).

Here, the ALJ found that the record shows Plaintiff was prescribed medication, including Seroquel, Adderall, and Bupropion, to treat her symptoms. A.R. 29; *see also* A.R. 383, 412. The ALJ also found that Plaintiff underwent other conservative treatment options, including therapy.[6] A.R. 29; *see also* 354, 810-823, 1013-1037. The ALJ found that the bulk of Plaintiff's treatment consisted of presentation for refills with few consistent defects and that, by Plaintiff's own report, she did not experience more than moderate symptoms and had many consistent reports of doing well. A.R. 30. The ALJ found that, in Plaintiff's medication management records, Plaintiff largely rated her own symptoms as no more than moderate (and often "mild" or "controlled") and reported feeling "normal," doing "well," and reporting "normal life stuff is great." A.R. 29; *see also* A.R.

---

[6] The Court notes that Plaintiff characterizes her treatment as a whole as conservative, *see* Docket No. 11 at 11; however, the ALJ only classifies Plaintiff's therapy as a form of conservative treatment. A.R. 29.

386, 390, 392, 394, 396, 905. At an appointment to refill her medications, Plaintiff denied any depression or anxiety and said she was "doing well." A.R. 390.  Plaintiff reported that one of her medications helped her "focus for some extent" and she was "doing really well." A.R. 392; *see also* A.R. 841 ("Wellbutrin has been beneficial for more focus").  Plaintiff said her anxiety and depression were controlled with medication and her energy, interest, and focus were "good." A.R. 396, 899, 903.  The ALJ acknowledged that Plaintiff reported significant situational stressors and that, when Plaintiff reported anger, anxiety or triggers, they appear to generally manifest in response to stressors such as her relationships or social media, but that Plaintiff appears to have navigated these issues well as she did not have any decompensations.  A.R. 30; *see also* A.R. 847, 851, 853. 866.  The ALJ also found that Plaintiff has reported that she is noncompliant with her ADHD treatment in that she takes "drug holidays," which suggests that her symptoms are not as disabling as alleged since the medical notes indicate she is stable when taking medications and Plaintiff largely presents for refills, which is another indication of stability.  A.R. 34; *see also* 846, 856, 858, 877.  The ALJ gave specific, clear, and convincing reasons for discounting Plaintiff's testimony based on these findings.

### IV.     CONCLUSION

For the reasons discussed above, the Court **DENIES** Plaintiff's motion to reverse and remand.  Docket No. 11.  The decision below is **AFFIRMED**.  The Clerk's Office is **INSTRUCTED** to **ENTER FINAL JUDGMENT** accordingly and to **CLOSE** this case.

Dated: October 10, 2024

_____
Nancy J. Koppe
United States Magistrate Judge